UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| ALGONQUIN GAS TRANSMISSION, LLC, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | Civil Action No. 18-10871-DJC |
| TOWN OF WEYMOUTH, | ) ) ) | |
| Defendants. | ) ) ) ) | |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                 February 11, 2019

### I.    Introduction

Plaintiff Algonquin Gas Transmissions, LLC ("Algonquin") has filed this lawsuit against the Town of Weymouth, Massachusetts ("Weymouth") seeking declaratory relief of federal preemption under the Natural Gas Act, 15 U.S.C. §§ 717 *et seq.* ("NGA") and a permanent injunction preventing Weymouth from invoking or relying upon an ordinance to deny Algonquin's efforts to obtain agency approval to construct and operate a natural gas pipeline compressor facility. D. 1. Algonquin has moved for summary judgment. D. 3. Weymouth has moved to dismiss, D. 19, and filed a cross-motion for summary judgment, D. 21. For the reasons stated below, the Court ALLOWS Algonquin's motion for summary judgment and DENIES Weymouth's motion to dismiss and cross-motion for summary judgment.

1

## II. Standard of Review

### A. <u>Motion to Dismiss</u>

In considering a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine whether the complaint alleges "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the misconduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting Ashcroft v. Iqbal, 556 U.S. at 678) (2009)). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (quoting Iqbal, 556 U.S. at 678).

### B. <u>Motion for Summary Judgment</u>

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (quoting Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997)). The movant "bears the burden of demonstrating the absence of a genuine issue of material fact." Rosciti v. Ins. Co. of Pa., 659 F.3d 92, 96 (1st Cir. 2011) (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir.

2000)). If the movant meets its burden, the nonmovant "must, with respect to each issue on which she would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in her favor." Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). "As a general rule, that requires the production of evidence that is 'significant[ly] probative.'" Id. (alteration in original) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986)). The Court views the record "in the light most favorable to the non-moving part[y]" and draws all reasonable inferences in the nonmovant's favor. Pineda v. Toomey, 533 F.3d 50, 53 (1st Cir. 2008).

## III.    Factual Background

The following facts are undisputed unless otherwise noted.[1] Algonquin is a natural gas company engaged in the transportation of natural gas in interstate commerce. D. 4 ¶ 1. On October 22, 2015, Algonquin and Maritimes & Northeast Pipeline, LLC ("Maritimes") filed an application for a certificate of public convenience and necessity with the Federal Energy Regulatory Commission ("FERC") to construct and operate a natural gas pipeline and related facilities known as the Atlantic Bridge Project ("AB Project"). Id. ¶ 2. As a part of the AB Project, Algonquin proposed to construct a compressor station located in Weymouth (the "Compressor Station"). Id. ¶ 3. Weymouth filed an unopposed petition to intervene in Algonquin and Maritimes' application process. Id. ¶ 5; D. 6-1 at 145.

---

[1] Weymouth disputes several facts that contain characterizations of documents only "to the extent th[e] characterization differs from the document's content" and does not otherwise dispute the authenticity of the underlying document or the Court's authority to consider the same in resolving the pending motions discussed herein. See, e.g., D. 24 ¶ 6.

3

On May 2, 2016, FERC issued an environmental assessment for the AB Project. D. 4 ¶¶ 6-7; D. 6-1. FERC's assessment, which was subject to a thirty-day comment period, addressed potential environmental issues associated with the Compressor Station, including air quality, noise, and visual effects, as well as possible alternative locations for the Compressor Station. D. 4 ¶¶ 6-7; D. 6-1 at 18-52. FERC determined that "the impacts associated with [the AB Project] can be mitigated to support a finding of no significant impact." D. 4 ¶ 8; D. 6-1 at 16. FERC concluded that an environmental impact study was not warranted. Id. On January 25, 2017, FERC issued a certificate (the "Certificate") granting Algonquin's application for authorization to construct and operate the AB Project subject to certain conditions, see D. 4 ¶ 10; D. 6-1 at 54, including the completion of construction within two years from the date of the AB Certificate, compliance with applicable NGA regulations and compliance with environmental conditions outlined in Appendix B to the AB Certificate. D. 6-1 at 142-53. On February 24, 2017, Weymouth filed requests for rehearing and rescission of FERC's order authorizing the AB Project and a motion to stay the order. D. 4 ¶ 11; D. 7-1 at 1-93. FERC denied both requests. D. 7-1 at 97-98.

As part of the conditions FERC set forth in Appendix B to the AB Certificate, Algonquin must obtain a consistency certification from the Massachusetts Office of Coastal Zone Management ("MCZM") before beginning construction of the Compressor Station, D. 4 ¶ 16; D. 6-1 at 151. The MCZM is the lead state agency responsible for implementing the Massachusetts Coastal Management Program ("MCMP") and reviewing federal licenses and permits to ensure consistency with the Coastal Zone Management Act ("CZMA"). D. 4 ¶ 17; D. 8-1 at 33. The Compressor Station would be in a "coastal zone" as defined by the CZMA because it affects land regulated by the MCMP. D. 4 ¶ 14; see 16 U.S.C. § 1455(d). In making consistency determinations as authorized by the CZMA, the MCZM reviews whether projects requiring a

4

federal permit are consistent with the "enforceable policies" contained within the MCMP. D. 4 ¶ 18; D. 8-1 at 35; see 16 U.S.C § 1456(c)(3)(A).

The MCZM has published a policy guide (the "Policy Guide") that "serve[s] as the official reference for the enforceable policies, listed federal actions, and necessary data and information for the Massachusetts coastal program." D. 4 ¶ 19; D. 8-1 at 35. Appendix 3 of the Policy Guide includes a "complete list" of statutes, regulation and other legal authorities "that constitute the legal basis for the enforceable [MCMP] policies." D. 4 ¶ 38; D. 8-1 at 3; see D. 8-1 at 133-37. The list includes, in relevant part, the Public Waterfront Act, Mass. Gen. L. c. 91 ("Chapter 91") and the Massachusetts Waterways Regulation, 310 C.M.R. § 9.00, D. 8-1 at 136, which are germane to the AB Project's consistency certification process given that permanent facilities and construction work associated with the Compressor Station require use of private and public tidelands regulated by Chapter 91 and 310 C.M.R. § 9.00. See D. 4 ¶ 40. Specifically, the Policy Guide states that an application for consistency certification must include "complete state licenses or permit applications, including a Chapter 91 Waterways License pursuant to 310 CMR § 9.00" ("Chapter 91 License"). D. 4 ¶ 39; see D. 8-1 at 43.

On December 8, 2015, Algonquin filed an application with the Massachusetts Department of Environmental Protection ("DEP") seeking a Chapter 91 License, which would authorize Algonquin to use certain filled tidelands to construct the Compressor Station. D. 4 ¶ 41; D. 8 ¶ 3. On May 17, 2017, DEP issued a "Written Determination Pursuant to M.G.L. Chapter 91" (the "Written Determination") expressing "its intent to approve [Algonquin's] application subject to the attached conditions." D. 4 ¶ 42; see D. 8-1 at 2. According to the Written Determination, DEP will not issue a Chapter 91 License until the Compression Station receives local approval pursuant to 310 C.M.R. § 9.11(3)(c)(3) (explaining that DEP may only provide a Chapter 91 license when

5

the applicant has submitted, among other things, final documentation relative to other state and local approvals that must be obtained) or until a determination is made that such approvals are preempted under the NGA. D. 4 ¶ 44; D. 8-1 at 4-5. DEP noted, however, that the FERC Certificate authorizing the AB Project expressly stated that "permits which unreasonably delay the construction or operation of facilities approved by [FERC] may be inconsistent with the [NGA]." D. 8-1 at 4-5 (internal quotations omitted).

On June 7, 2017, Weymouth appealed the Written Determination to DEP's Office of Appeals and Dispute Resolution ("OADR"). D. 4 ¶ 45; D. 8-1 at 143-63. In its prehearing statement, Weymouth asserted, among other things, that the Written Determination was prematurely issued and a final Chapter 91 License was inappropriate given that Algonquin had not received certain local approvals, including a certificate of compliance with Weymouth's wetlands ordinance (at issue in Algonquin Gas Transmission, LLC v. Weymouth Conservation Commission et al., No. 17-cv-10788-DJC ("Algonquin I"))[2] and its zoning ordinance (the "Ordinance") prohibiting buildings erected, altered or used "for any purposes injurious, noxious or offensive to a neighborhood by reason of the emission of odor, fumes, dust, smoke, vibration or noise . . . ." D. 8-1 at 233-34; see D. 4 ¶ 46. Weymouth explained that the Compressor Station violates the Ordinance because it is "not included in the [Ordinance's] list of exempted purposes, and because it would result in the emission of noxious and offensive noises and odors." D. 4 ¶ 48; D. 8-1 at 233-34. Weymouth concluded that the Compressor Station would not comply with the Ordinance

---

[2] In Algonquin I, this Court ruled in Algonquin's favor, concluding that Weymouth's wetlands ordinance conflicted with the NGA and, therefore, was preempted. See Algonquin I, No. 17-cv-10788-DJC, D. 38 at 14. Weymouth filed an appeal on July 24, 2018, and the First Circuit held oral argument on that matter on January 8, 2019. As of the date of this Court's order, the First Circuit had not yet decided Algonquin I.

6

even though Algonquin has not applied for a building permit or a municipal zoning certificate. See D. 23 ¶¶ 6-12; D. 21-1 ¶¶ 9-11.

Weymouth also filed a motion to stay the appeal of the DEP's Written Determination until Algonquin demonstrated compliance with the Ordinance and the wetlands ordinance at issue in Algonquin I, or obtained a ruling from a court of competent jurisdiction preempting the same. See D. 4 ¶ 49; D. 8-1 at 249-61. On August 22, 2017, the DEP officer presiding over Weymouth's appeal issued an order staying the Chapter 91 license proceeding until this Court issued a decision regarding whether "the Weymouth Conservation Commission's denial of a wetlands permit under the Weymouth wetlands ordinance is preempted by the NGA." D. 4 ¶ 54; D. 8-2 at 6-7. Following this Court's determination in Algonquin I that the wetlands ordinance is preempted by the NGA, Algonquin moved to lift the stay of the Chapter 91 license proceeding. D. 4 ¶ 56; D. 8-2 at 44-49. Weymouth opposed Algonquin's motion, in part, because it alleged this Court's ruling in Algonquin I was "clearly erroneous and likely to be overturned on appeal." D. 8-2 at 51. In March 2018, the DEP presiding officer issued an order that vacated the stay and scheduled bifurcated hearings on the issues raised in Weymouth's appeal, including whether Algonquin is "required to obtain a municipal zoning certificate" to obtain a Chapter 91 License. D. 8-2 at 71 n.8. On November 21, 2018, the DEP presiding officer ruled, in relevant part, that Algonquin "must obtain a local zoning certificate prior to final license issuance unless [the Ordinance] is preempted by the Natural Gas Act." D. 36 at 7.

## IV. Procedural History

Algonquin commenced this action on May 3, 2018, seeking a declaration that the Ordinance, as applied to Algonquin's efforts to construct and operate the Compressor Station, is preempted by the NGA. D. 1. Algonquin has now moved for summary judgment. D. 3.

7

Weymouth filed a cross-motion for summary judgment, D. 21, and moved to dismiss the complaint, D. 19. The Court heard oral argument on the motions and took the matters under advisement. D. 35.

V.     Discussion

   A.     **Algonquin Has Stated an Article III Controversy Against Weymouth**

In its motion to dismiss, Weymouth contends that Algonquin does not have standing to bring this suit, and even it if it does, the declaratory relief Algonquin seeks is not ripe for adjudication. D. 20 at 5, 13. Article III of the Constitution limits federal courts to deciding cases or controversies. See U.S. Const., art. III § 2; Merrimon v. Unum Life Ins. Co. of Am., 758 F.3d 46, 52 (1st Cir. 2014). A "case or controversy exists only when the party soliciting federal court jurisdiction . . . demonstrates 'such a personal stake in the outcome of the controversy as to assure the concrete adverseness which sharpens the presentation of issues upon which the court so largely depends.'" Katz v. Pershing, LLC, 672 F.3d 64, 71 (1st Cir. 2012) (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)). The justiciability doctrines of standing and ripeness are rooted in Article III and must be addressed as a threshold inquiry prior to adjudication of the merits of the underlying case. See Reddy v. Foster, 845 F.3d 493, 499-500 (1st Cir. 2017). The Court considers each in turn.

   *1.     Standing*

To establish standing, a plaintiff must show "a concrete and particularized injury in fact, a causal connection that permits tracing the claimed injury to the defendant's actions, and a likelihood that prevailing in the action will afford some redress for the injury." City of Bangor v. Citizens Commc'ns Co., 532 F.3d 70, 92 (1st Cir. 2008) (internal quotation marks omitted) (quoting Me. People's Alliance & Natural Res. Def. Council v. Mallinckrodt, Inc., 471 F.3d 277, 283 (1st Cir. 2006)). Algonquin contends that it has standing to assert its preemption claim because

Weymouth (1) insisted in proceedings before the DEP that Algonquin must receive a municipal zoning ordinance before the DEP can issue a Chapter 91 License, and (2) expressly stated before the DEP that the Compressor Station "violate[s]" and "is prohibited by" the Ordinance, D. 8-1 at 234. D. 25 at 9. According to Weymouth, Algonquin cannot state a justiciable claim against it given that Algonquin has never applied for a municipal zoning ordinance and Weymouth has never enforced the same against it to prohibit issuance of the Chapter 91 License. D. 20 at 10. Weymouth has argued in DEP proceedings that Algonquin must comport with state laws requiring local approvals, including a municipal zoning certificate, before obtaining a Chapter 91 License. Id. To the extent Algonquin has suffered an injury, Weymouth asserts that DEP caused the claimed injury as the state agency responsible for issuing the license Algonquin seeks. Id. at 10-11.

Since the filing of Weymouth's motion to dismiss, DEP's presiding officer specifically stated that, in the event the NGA preempts the Ordinance, the Compressor Station will be "exempted from [the zoning] requirements by law and the Department can issue a [Chapter 91 License] without the zoning certificate." D. 36 at 51 (alterations in the original) (internal quotation marks omitted). Moreover, "[i]f the NGA does not preempt local zoning, then a zoning certificate will be required before a license can be issued." Id. The Ordinance (and, by extension, Weymouth, as the town responsible for enacting and enforcing the Ordinance) has "directly affected the federal regulatory processes that determine whether the [natural gas] project can proceed." Weaver's Cove Energy, LLC v. Rhode Island Coastal Res. Mgmt. Council, 589 F.3d 458, 467 (1st Cir. 2009). Given that the issuance of the Chapter 91 License has been delayed for nearly two years due, in part, to a local zoning ordinance subject to federal preemption, D. 8-1 at 143-63 (indicating that Weymouth appealed the DEP's Written Determination on June 7, 2017), Algonquin has suffered

9

an injury that is traceable to Weymouth and readily redressable. Accordingly, the Court concludes that Algonquin has standing to pursue its claim.

 2. *Ripeness*

For a claim to be ripe in the declaratory judgment context, the plaintiff must satisfy a two-prong test: fitness for review and hardship. See Ernst & Young, Ernst & Young v. Depositors Economic Protection Corp., 45 F.3d 530, 535 (1st Cir. 1995). First, the court must determine whether the issue presented is fit for judicial review and "[t]he critical question . . . is whether the claim involves uncertain and contingent events that may not occur as anticipated, or indeed may not occur at all." Mass. Ass'n of Afro–Am. Police, Inc. v. Bos. Police Dep't, 973 F.2d 18, 20 (1st Cir. 1992). Weymouth contends that Algonquin's claim is not ripe for three reasons: (1) DEP proceedings regarding the issuance of a Chapter 91 License are ongoing and, thus, DEP could issue a final decision that makes this case hypothetical, (2) Algonquin has never requested a municipal zoning certificate from Weymouth and (3) Algonquin has never requested an exemption from local zoning requirements. D. 20 at 13. As explained in Weaver's Cove, a question of preemption may be ripe for review even where "regulatory approval . . . is ongoing." Weaver's Cove, 589 F.3d at 468. Where, as here, the Court's ruling on preemption will determine whether Algonquin can obtain a Chapter 91 License without applying for a municipal zoning certificate or seeking a local or state law exception, the Court's review is neither "advisory" nor "irrelevant to the ultimate approvability of the project." Id. Although resolution of the issue currently before the Court "might not secure the [Compressor Station's] ultimate approval," id., the Ordinance would "cease to be [a] barrier[]" to the process. Id. at 469. The issue here is concrete, and Algonquin's claim is ripe for adjudication.

10

## B. The Weymouth Zoning Ordinance is Preempted

Pursuant to Article VI of the United States Constitution, Congress can preempt state law so that it is "without effect." Maryland v. Louisiana, 451 U.S. 725, 746 (1981) (citing McCulloch v. Maryland, 17 U.S. (4 Wheat.) 316, 427 (1819)). The "purpose of Congress is the ultimate touchstone of pre-emption analysis." Cipollone v. Liggett Grp., Inc., 505 U.S. 504, 516 (1992) (internal quotation marks and citation omitted). Congress's purpose can be "explicitly stated in the statute's language or implicitly contained in its structure and purpose." Jones v. Rath Packing Co., 430 U.S. 519, 525 (1977) (citing City of Burbank v. Lockheed Air Terminal Inc., 411 U.S. 624, 633 (1973); Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)). Alternatively, preemption may be implied. Implied preemption manifests as either conflict preemption or field preemption. A state law is preempted under conflict preemption when it either makes "compliance with both federal and state regulations [] a physical impossibility," Arizona v. United States, 567 U.S. 387, 399 (2012) (quoting Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142–143 (1963)), or "stand[s] as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress," id. (quoting Hines v. Davidowitz, 312 U.S. 52, 67 (1941)). A state law is preempted under field preemption when Congress has "occupied the field" by creating "a framework of regulation 'so pervasive . . . that Congress left no room for the States to supplement it'" or "where there is a 'federal interest . . . so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject.'" Id. (alterations in original) (quoting Rice v. Santa Fe Elevator Corp., 331 U.S. 218, 230 (1947)).

As an initial matter, Weymouth contends that the NGA's savings clause for "rights of states" insulates the Ordinance from preemption. D. 22 at 12-14. There is no dispute that NGA's savings clause preserves the rights of states under the CZMA, the Clean Air Act and the Federal

11

Water Pollution Control Act. See 15 U.S.C. § 717b(d). The CZMA, in turn, provides the mechanism by which states may regulate public and private uses of land and water in coastal zones, *i.e.*, federally approved coastal zone management programs, including the MCMP. See 16 U.S.C. § 1454 (establishing process for federal approval of state coastal zone management programs); see also AES Sparrows Point LNG, LLC v. Smith, 527 F.3d 120, 126 (4th Cir. 2008) (explaining that "[t]he mechanism the CZMA provides for the exercise of [states' rights]—whatever their content or source—is a federally approved CMP"). As part of the authority granted by the CZMA, states may "review federal projects, federally financed projects, and projects receiving federal licenses and permits . . . to ensure that they abide by state-defined enforceable coastal polices." D. 8-1 at 33. The MCMP Policy Guide includes the complete list of enforceable policies approved by the federal agency that administers the CZMA, the National Oceanic and Atmospheric Administration ("NOAA"). Id. at 33-34, 133-147. The Policy Guide also states that "legal authorities underlying the [MCMP] shall also be construed to include any other Massachusetts General Laws or Special Acts of Legislature explicitly cited as an authority within the listed regulations, together with any state court decrees governing the interpretation or application" of the same. Id. at 133. The Weymouth Zoning Ordinance (WEYMOUTH, MA., CODE § 120 (1970)) does not appear among the listed enforceable policies nor is it explicitly cited by any policy on the list. See id. at 133-147.

Weymouth argues instead that its Ordinance is incorporated into the MCMP because certain enforceable authorities, including Mass. Gen. L. c. 91, § 18 and the regulations at 310 C.M.R. § 9.00, require compliance with local zoning ordinances as a matter of state law, and because Mass. Gen. L. c. 40A governs, among other things, the enforcement of local zoning ordinances. See, e.g., D. 22 at 13. For support, Weymouth relies upon Dominion Transmission, Inc. v. Summers, 723 F.3d 238 (D.C. Cir. 2013). There, the court concluded that the NGA did not

12

preempt a local ordinance that was incorporated by reference into a state implementation plan approved by EPA pursuant to the Clean Air Act. See Dominion, 723 F.3d at 243-44. The state implementation plan at issue in that case, however, specifically states that relevant state law and other enforceable policies may be incorporated by reference in lieu of EPA's express approval. See 40 C.F.R. § 52.1070(b)-(c) (identifying legal authorities approved for incorporation by reference into the state implementation program); Dominion, 723 F.3d at 244 (explaining that "[w]hen EPA approves a state SIP, it incorporates the relevant state law into the Code of Federal Regulations by reference"). Here, the MCMP identifies two categories of enforceable polices: authorities listed in Appendix B to the Policy Guide and authorities "explicitly cited as an authority within the listed regulations." D. 8-1 at 133. Because the Ordinance does not fall within either category, it is not an enforceable policy protected from preemption pursuant to the rights granted to states by the CZMA. Should the Commonwealth of Massachusetts seek to amend or modify the MCMP to include the Ordinance, it must do so via the mechanism provided by Congress. Indeed, the NOAA has approved modifications to the MCMP on numerous occasions since 1978, including to add new enforceable policies. See D. 8-2 at 103-259.

Given that the Ordinance is not immune from preemption, the Court now turns to the merits of Algonquin's claim. Weymouth has taken the position that its Ordinance prohibits Algonquin from constructing and operating the Compressor Station at its FERC-approved location. See 8-1 at 233-34. Algonquin argues that the Ordinance is preempted under conflict preemption. D. 5 at 13-15. After conducting an environmental assessment, FERC authorized the AB Project over Weymouth's objection in January and February 2017. Nonetheless, Weymouth repeatedly asserted in DEP proceedings that the Ordinance prohibits the Compressor Station's construction "because it would result in the emission of noxious and offensive noises and orders." D. 8-1 at

13

233-34. As part of its environmental assessment, FERC considered potential environmental issues associated with the Compressor Station, including air quality, noise, and visual effects, as well as possible alternative locations. D. 6-1 at 18-52. After conducting thirteen open houses, four public scoping meetings attended by nearly five hundred individuals and reviewing over three hundred comment letters, id. at 16-17, FERC determined that "the impacts associated with [the AB Project] can be mitigated to support a finding of no significant impact," id. at 16, and issued a certificate to Algonquin authorizing construction and operation of the Compressor Station, id. at 54. Because FERC has already "carefully reviewed the very" proposal Weymouth "seek[] to further regulate and, after considering environmental impacts, authorized the project," the Ordinance "clearly collides with FERC's delegated authority and is preempted" in its entirety.[3] Weaver's Cove, 589 F.3d at 473.[4]

Weymouth also asserts that the Ordinance does not conflict with FERC's exclusive authority to review and approve the Compressor Station because Algonquin never applied for a municipal zoning certificate and, as a result, has not determined which provisions of the Ordinance that might apply. D. 22 at 18. However, "subjecting the project to regulation under the [O]rdinance," including the municipal zoning certification process, "would be tantamount to

---

[3] In light of this ruling, the Court does not reach Algonquin's field preemption argument.

[4] Weymouth attempts to narrow the scope of Weaver's Cove application to the instant case by asserting that the First Circuit found conflict preemption for an LNG terminal based on the NGA's grant of express, preemptive jurisdiction over such facilities and the Compressor Station at issue here is not an LNG terminal. D. 22 at 20. FERC has the exclusive authority to issue a certificate of public convenience and necessity, which authorizes the construction and operation of facilities like the Compressor Station. See 15 U.S.C. § 717c. To the extent the Weymouth Zoning Ordinance conflicts with that authority, the First Circuit's analysis of conflict preemption in Weaver's Cove applies with equal force to the facts at issue here.

conferring on [Weymouth] the power to review and nullify FERC's decision" authorizing the Compressor Station's construction. Algonquin LNG v. Loqa, 79 F. Supp. 2d 49, 52 (D.R.I. 2000).

Finally, Weymouth asserts that discovery is needed before the Court can reach a decision on summary judgment. Where, as here, the parties have litigated an overlapping issue, see Algonquin I, No. 17-cv-10788-DJC, and have provided hundreds of pages of exhibits, affidavits and an administrative record in support of the pending motions, the issue here is ripe for resolution at this stage in the litigation. For the aforementioned reasons, the Ordinance conflicts with the NGA and is preempted.

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS Algonquin's motion for summary judgment. D. 3. The Court DENIES Weymouth's motion to dismiss, D. 19, and cross-motion for summary judgment, D. 21.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge